UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KENYATTA WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:02CV01250 ERW |
| | ) | |
| JOHN W. HOOKER, et al., | ) | |
| | ) | |
| Defendant(s). | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants Augustus Hannel, John Hooker, and Harold Leventry's (collectively, "Defendants") Motion for Summary Judgment [doc. #197] and Kenyatta Williams-Bey's ("Plaintiff") Motion to Strike Inadmissable Evidence Submitted in Support of Defendant's Motion for Summary Judgment [doc. #200].

## I. PROCEDURAL BACKGROUND

Plaintiff filed suit under 42 U.S.C. § 1983, seeking damages for Eighth Amendment violations, conspiracy and retaliation under 42 U.S.C. §§ 1983, 1985 and Mo. Rev. Stat. §§ 417.405, 417.410. This Court granted Plaintiff's Motion to Appoint Counsel [doc. #82] on September 22, 2003. Defendants filed a motion to dismiss [doc. #111] and the Court partially dismissed Plaintiff's case on May 18, 2004. A summary judgment motion [doc. #130] was filed on December 1, 2004, and this motion was granted, resulting in the dismissal of all remaining claims on March 28, 2005.

Plaintiff appealed the Court's decisions, and the Eighth Circuit determined that the Court erred in viewing Plaintiff's "complaint as stating only official-capacity claims" and found that the claims should not have been dismissed based on the Eleventh Amendment. However, the Eighth

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Circuit found that the Court correctly dismissed most of Plaintiff's claims, but found that Plaintiff did state Eighth Amendment and retaliation claims. The Eighth Circuit reversed and remanded the Court's decision "as to the excessive-force claim, the deliberate-indifference medical claim, and the retaliation claim, against MDOC defendants Hooker, Hannel, and Leventry." *Williams-Bey v. Kempker*, 192 F.App'x 569, 572 (8th Cir. 2006). Plaintiff was appointed a new attorney by the Court on August 22, 2006. Plaintiff filed his Fourth Amended Complaint [doc. #181] on November 3, 2006. This complaint alleges cruel and unusual punishment, retaliation and deprivation of right of access to legal process, denial of equal protection, and negligence against Defendants Hooker, Hannel, and Leventry. Following additional discovery, Defendants filed a Motion for Summary Judgment [doc. #198] on April 20, 2007. Plaintiff asserts that some of the evidence submitted in support of Defendants' Motion for Summary Judgment is inadmissable and has filed a Motion to Strike [doc. #200]. Both of these motions are fully briefed and presently before the Court.

## II.  BACKGROUND FACTS[1]

The claims alleged by Plaintiff arise from an incident that took place on August 31, 2001. Plaintiff was an inmate in the Potosi Housing Unit 3, B-Wing ("B-Wing"), and was playing chess with another inmate. Defendant Hooker and Correctional Officer Zetler were assigned to B-Wing at the time of the incident. The parties disagree about where Defendant Hooker was prior to responding to the incident. Defendant Hooker claims that he was by the inmate phone cages and

---

[1] The Court's recitation of the facts is taken from Defendants' Statement of Uncontroverted Material Facts and Plaintiff's Opposition to Defendants' Motion for Summary Judgment. As discussed in more detail below, Defendants' Exhibit B contains inadmissible hearsay. As a result, the Court does not consider the evidence in Exhibit B for the purposes of this motion and does not include Defendants' Statements of Uncontroverted Material Facts that rely upon Exhibit B for evidentiary support.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

heard about the fight through a radio call, while Plaintiff says that he was standing by the sally port door when the attack occurred.

At approximately 6:04 p.m., Plaintiff was attacked by Rafael Jackson ("Inmate Jackson"), another inmate in B-Wing. Inmate Jackson attacked Plaintiff with a straight blade razor. Plaintiff was able to get up from the table and defended himself by swinging at Inmate Jackson with his fist and by kicking. Defendant Hooker responded to the altercation. It was clear that Inmate Jackson was slashing at Plaintiff and that Plaintiff was bleeding around his face and neck and trying to escape further injury. Defendant Hooker ordered Plaintiff and Inmate Jackson to separate. When they did not separate, Defendant Hooker sprayed Plaintiff in the face with pepper spray. Plaintiff states that prior to spraying him with pepper spray, Defendant Hooker grabbed Plaintiff's arm and prevented him from fending off Inmate Jackson's attack. Defendant did not seize Inmate Jackson or his weapon.

Plaintiff[2] states that Officer Zettler yelled "what the fuck are you doing!" at Defendant Hooker, and that Defendant Hooker then exited B-Wing and went into the sally port. Plaintiff states that Officer Zettler then intervened in the fight and Plaintiff left the area, making it to the sally port.[3] Defendant Hooker was in the sally port and Plaintiff says that Defendant Hooker threw him against a metal drawer that was protruding from the wall and sprayed him again with pepper spray. Plaintiff tried to get away from Defendant Hooker by going into the airlock, a

[2] At this point Plaintiff's description of events differs from Defendant Hooker's description. Defendant Hooker states that after he first sprayed Plaintiff with pepper spray, Plaintiff ran towards the sally port door and Defendant Hooker followed Plaintiff. Defendant Hooker states that he told Plaintiff to get down on the ground, and that Plaintiff complied. While Plaintiff was on the ground Defendants Hannel and Leventry arrived in the sally port, and Defendant Hannel told Defendant Leventry to handcuff Plaintiff.

[3] Officer Zettler's affidavit states that he guided Plaintiff, who was partially blinded by the mace, away from Inmate Jackson and toward the sally port.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

hallway between B-Wing and A-Wing, at which point Defendant Hooker caught Plaintiff, grabbed him by the throat, and slammed him to the floor. Defendants Hannel and Leventry arrived shortly thereafter. Defendant Leventry followed Defendant Hannel's orders to handcuff Plaintiff. Defendant Leventry pinned Plaintiff, drove a knee into Plaintiff's back, and handcuffed Plaintiff behind his back. Plaintiff states that he was never aggressive and simply kept crying out that he was bleeding and his eyes were burning as he laid on the floor.

Defendants later instructed Plaintiff to walk to the prison infirmary, but Plaintiff collapsed in route and he had to be taken to the infirmary in a wheel chair. A nurse at the infirmary washed the pepper spray from Plaintiff's eyes and began tending to his other wounds. Later that night Officer Hannel took Plaintiff to Washington County Memorial Hospital, where he received more than 200 stitches for the wounds on his face, throat, wrist and hand.

Plaintiff states that he does not know why Inmate Jackson attacked him, but that he heard from another inmate that the attack was performed as a service for Captain Mayberry who was a Lieutenant at Potosi Correctional Center. Plaintiff has filed, both on behalf of himself and other inmates, grievance actions alleging mistreatment and wrongdoing by guards and other prison officials. Plaintiff states that the guards at Potosi Correctional Center have been known to retaliate against inmates who file "too many" grievances. Sometimes guards will use other inmates to perform the retaliation.

Inmate Jackson is a convicted murderer with a reputation for committing prison assaults. Approximately a month before the attack, on July 26, 2001, Inmate Jackson was considered an "immediate security risk" and was separated from other inmates for "the security and good order of the institution." Inmate Johnson was kept in administrative segregation until August 31, 2001, the date of the attack. While in administrative segregation, inmates are only permitted to shave

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

three times a week, and razors are retrieved from inmates and accounted for by prison guards after every shaving period.

Immediately before the attack, a prison nurse entered B-Wing to dispense medications. Contrary to prison rules and protocols, B-Wing did not lock down after the nurse arrived to distribute medications. As a result, cell doors were left open and Inmate Jackson was able to attack Plaintiff. At the time of the attacks against Plaintiff, three surveillance cameras were mounted in B-Wing and recorded at least parts of the attacks. Despite a court order, the only video recording Defendants have produced is a single tape that has, according to Plaintiff, "been altered, spliced and cut short such that it does not show the events in question."

## III.     LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (*quoting* Fed. R. Civ. P. 1). "By its very terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

248.  Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 256-57. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

The court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The court instead "perform[s] only a gatekeeper function of

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

## IV. DISCUSSION

## A. MOTION TO STRIKE

Local Rule 7-4.01(E) states that all facts that are not specifically controverted by the opposing party are deemed admitted. *See Deichmann v. Boeing Co.*, 36 F. Supp 2d 1166, 1168 (E.D. Mo. 1999). Plaintiff has moved to strike Exhibit B of Defendants' Motion for Summary Judgment, asserting that it does not contain admissible evidence.[4] Under Rule 56(e), the facts set forth to support or oppose a motion for summary judgment must be admissible in evidence to be considered by the Court. *Shaver v. Independent Stave Co.*, 350 F.3d 716, 723 (8th Cir. 2003).

Evidence is admissible for the purpose of a summary judgment motion if it is in the form of either admissible documents or attested testimony, such as depositions or affidavits. 62 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 708 (L. Ed. 2007). The court may "consider only admissible evidence" and is prohibited from using "affidavits and depositions that were made without personal knowledge, consisted of hearsay, or purported to state legal conclusions as fact." *Murphy v. Missouri Dept. of Corrections*, 372 F.3d 979, 982 (8th Cir. 2004). Inadmissable evidence "may not be used to support or defeat a motion for summary judgment." *Brooks v. Tri-Systems, Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005).

---

[4] The Court notes that there is some dispute over whether a motion to strike is appropriate as Fed. R. Civ. P. 12(f) applies to pleadings and not motions for summary judgment. *See, e.g. Aftergood v. Central Intelligence Agency*, 355 F. Supp 2d 557, 564 (D.D.C. 2005). However, the Eighth Circuit has held that where an affidavit does not meet the standards set in Fed. R. Civ. P. 56(e), it is subject to a motion to strike. *McSpadden v. Mullins*, 456 F.2d 428, 430 (8th Cir. 1972).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Exhibit B is the Investigative Report completed by Scott Hall. This report contains, and is based on, the unsworn statements of those who were interviewed during an investigation into the incident. These statements were not made at trial or in a hearing and Defendants now seek to admit them to prove the truth of what these statements assert. As a result, these statements are hearsay. Exhibits "which constitute hearsay are generally excludable though they may be considered where they fall within an exception to the hearsay rule . . ."[5] 62 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 713 (L. Ed. 2007). As a result, the statements within Exhibit B may only be admitted if they fall under an exception to the hearsay rule.

Investigation reports present issues of double hearsay as (1) the unsworn report itself is hearsay, and (2) the statements of others that are recounted or summarized within the report are hearsay. *See United States v. Ortiz*, 125 F.3d 630, 632 (8th Cir. 1997). As a result, Defendants must show that exceptions to both layers of hearsay apply in order for this exhibit to be admissible. Defendants have failed to show that the statements of others that are recounted in the report fall under any exception to the hearsay rule, and as a result, this exhibit is inadmissible.

Defendants contend that this evidence would be admissible at trial for purposes of impeachment. However, this argument fails as hearsay evidence that is admissible solely for impeachment is inadmissible for purposes of summary judgment. *Firemen's Fund Ins. Co. v.*

---

[5] Some circuits also allow hearsay evidence to be admitted where the statement could be "reduced to admissible evidence at trial." *Macuba v. Doboer*, 193 F.3d 1316, 1323 (11th Cir. 1999); *see also Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.*, 998 F.2d 1224, 1246 (3d Cir. 1993). However, the Eighth Circuit has never embraced this logic.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

*Thien*, 8 F.3d 1307, 1311-12 (8th Cir.1993). Defendants also assert that this evidence is not hearsay as these statements could be admitted by Plaintiff as an admission of a party opponent. However, this exception does not apply to many of the statements in this report as they were made by individuals who are not a party to this suit. *See Wilburn v. Robinson*, 480 F.3d 1140, 1143 (D.C. Cir. 2007). Additionally, this exception fails as to the statements made by Defendants. While Plaintiff may be able to admit these statements against Defendants at trial, in this instance, Defendants are propounding this report and seek to admit evidence of their own statements. This simply does not satisfy the requirements for an admission of a *party opponent*. Finally, Defendants argue that the statements could be offered into evidence at trial to rebut a charge of recent fabrication. While this is correct, that does not result in this evidence being admissible at the summary judgment stage when Plaintiff has not made any accusations of recent fabrication.

Exhibit B contains hearsay statements, and is not reliable evidence for purposes of meeting the burden of proof on summary judgment. *Firemen's Fund Ins. Co.*, 8 F.3d at 1310 (stating that "[t]he district court must base its determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial."). Exhibit B does not fall under any hearsay exceptions, and "a party may not rely on inadmissible hearsay" in supporting or opposing a motion for summary judgment. *Pink Supply Corp. v. Hiebert, Inc.*, 788 F.2d 1313, 1319 (8th Cir. 1986); *see also Booker v. Kessinger/Hunter Management, Inc.*, 2005 WL 2090777 at *5 (W.D. Mo. August 2, 2005). At trial the facts may unfold in such a way to lay the necessary foundation for the exceptions Defendants propose, however, the necessary foundation has simply

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

not been laid at this juncture.  As a result, the Court cannot consider the evidence presented in Exhibit B.[6]

## B.  MOTION FOR SUMMARY JUDGMENT

Plaintiff alleges violations of 42 U.S.C. § 1983, based on the Defendants' alleged conduct. The Court will begin by addressing Defendants' immunity from official capacity claims and will then evaluate each of Plaintiff's claims.  In evaluating each claim, the Court will assess whether "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law" and consider the individual Defendants' assertion of qualified immunity.  Fed. R. Civ. P. 56(c); *see Celotex*, 477 U.S. at 322.

### *1.    Official Capacity Claims*

Plaintiff has brought his complaint against Defendants in both their individual and official capacity, and Defendants argue that the official capacity claims should be dismissed. Plaintiffs may seek injunctive relief in suits against state employees in their official capacity. *Heartland Academy Cmty. Church v. Waddle*, 427 F.3d 525, 530 (8th Cir. 2005).  However, claims for money damages brought against state officers in their official capacities are barred "either by the Eleventh Amendment, or because in these capacities they are not 'persons' for § 1983 purposes."  *Murphy v. State of Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997) (*citing Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989).  Plaintiff is not seeking injunctive relief under any of his claims.  As a result, the Court must grant summary judgment for Defendants with respect to Plaintiff's claims against Defendants in their official capacities.  However, claims for

---

[6] Defendant bases the information in paragraphs 2, 4, 7, 8, 23, 24, 25, 26, 27, 28, 29, 30, 33, 34, 35, 38, 39, 40, 41, 42, 43, 44, 45, 46 of the Statement of Uncontroverted Material Facts solely on Exhibit B.  Paragraph 14 of the Statement of Uncontroverted Material Facts relies upon both Exhibit B and Exhibit C.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

monetary damages "against public officials in their individual capacities" are not barred by the Eleventh Amendment, and Plaintiff's claims against Defendants in their individual capacities remain before the Court. *Thomas v. Gunter*, 32 F.3d 1258, 1261 (8th Cir. 1994).

### 2. Count 1: Cruel and Unusual Punishment[7] - Deliberate Indifference to a Serious Medical Need by Defendants Hannel and Leventry

To succeed on an Eighth Amendment medical claim, a plaintiff must allege and prove, by a preponderance of the evidence, a "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal citations omitted). Deliberate indifference may be established "by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05. It is important to note, however, that mere negligence on the part of the prison guards is "insufficient to rise to a constitutional violation." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). "An inmate must show '(1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Plemmons v. Roberts*, 439 F.3d 818, 825 (8th Cir. 2006) (*quoting Dulany*, 132 F.3d at 1239).

The first prong of the test for deliberate indifference is shown as Plaintiff had a serious medical need. A serious medical need is one so obvious that even a layperson would easily recognize the need for treatment. *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995). Plaintiff had just been attacked, and had suffered wounds to many places on his body, including his face

---

[7] Prison conditions may amount to cruel and unusual punishment. The facts alleged by Plaintiff indicate potential violations of the prohibition against cruel and unusual punishment resulting from; (1) deliberate indifference to a serious medical need, (2) failure to protect a prisoner from foreseeable attack or otherwise to guarantee his safety, and (3) excessive use of force. The Court will consider all of these potential violations of the Eighth Amendment as they apply to each relevant defendant.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

and neck. His injuries would later require over 200 stitches. He had also been sprayed in the eyes twice with pepper spray and was lying "on the floor in a pool of blood," "crying out that he was bleeding and his eyes were burning." A layperson in this situation would recognize that Plaintiff needed medical care, and the evidence shows that Plaintiff had a serious medical need.

Plaintiff has also established that Defendants Hannel and Leventry were deliberately indifferent. *Plemmons*, 439 F.3d at 825. Defendants Hannel and Leventry knew that Plaintiff had a serious medical need, but "deliberately disregarded those needs" when they forced Plaintiff to lay on the ground while he was severely bleeding and while his vision was impaired from the mace, and then, despite his obvious injuries, made him walk to the infirmary until he collapsed.

Additionally, it is possible that Plaintiff has a claim for deliberate indifference to a medical need against Defendants Hannel and Leventry resulting from a delay in access to medical care. Deliberate indifference to a serious medical need may be manifested "by prison guards in intentionally denying or delaying access to medical care." *Estelle*, at 104-05. "A reasonable officer would know that it is unlawful for officers to delay medical treatment for an inmate with obvious signs of medical distress." *Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 863 (8th Cir. 2006). As discussed above, the Court cannot consider the evidence that was presented by Defendants in Exhibit B. This exhibit contains evidence of the timing between the attack and when Plaintiff arrived at the hospital. While some delay was certainly necessary for Defendants to restore order to B-Wing, the delay that occurred may demonstrate deliberate indifference. The determination of whether a "delay is constitutionally actionable depends on the seriousness of an inmate's medical condition and on the reason for the delay." *Plemmons*, 439 F.3d at 825 (internal citations omitted). An inmate who complains that the delay in medical treatment violated the constitution must introduce evidence to establish that the delay had a detrimental effect, *unless*

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Defendants are found to have inflicted serious injury themselves.  *Bolin v. Rude*, 2005 WL 2994288 at *4 (W.D. Mo. November 7, 2005); *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995); *Reece v. Groose*, 60 F.3d 487, 491 (8th Cir. 1995).

Based on the findings enumerated above, Defendants Hannel and Leventry are not entitled to qualified immunity.  Qualified immunity protects government officials performing discretionary duties from liability "insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The Eighth Circuit has articulated a two step inquiry that is used to determine whether a defendants actions, taken within the sphere of official responsibility, are protected by qualified immunity.  *Ware v. Morrison*, 276 F.3d 385, 387 (8th Cir. 2002); *see Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The threshold question the Court must ask is "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201.  The next step in the analysis is to ask if "the right was clearly established . . . in light of the specific context of the case." *Id.* In the case at hand, the Court finds sufficient evidence that Defendants Hannel and Leventry may have violated Plaintiff's Eighth Amendment rights.  Such rights under the Eighth Amendment, dealing with deliberate indifference to a serious medical need,  were clearly established at the time of the alleged attack.  Therefore, Defendants Hannel and Leventry's motion for summary judgment on grounds of qualified immunity should be denied.

### 3.  Count 1:  Cruel and Unusual Punishment - Failure to Protect a Prisoner from Foreseeable Attack or Otherwise to Guarantee his Safety

Prisoners have a civil right to personal security, and that right imposes a duty upon prison administrators to protect inmates from attacks or assaults by other inmates.  *Berry v. Sherman*,

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

365 F.3d 631, 633-34 (8th Cir. 2004). However, the risk of violence in a maximum security prison is a risk "that may be unavoidable." *See Andrews v. Siegel*, 929 F.2d 1326, 1330 (8th Cir. 1991). As a result, Courts must "give prison officials wide-ranging deference . . . to preserve internal order and discipline and to maintain institutional security." *Jackson v. Everett*, 140 F.3d 1149, 1152-53 (8th Cir. 1998) (internal citations and quotations omitted). In the absence of an obvious risk of harm, a single incident causing injury to an inmate will not typically establish an Eighth Amendment violation." *See Lenz v. Wade*, 490 F.3d 991, 995-96 (8th Cir. 2007). In order for an inmate to invoke this right, they must show that they are "incarcerated under conditions posing a substantial risk of serious harm" and that defendants displayed "deliberate indifference" to the inmate's plight. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference requires that the official know, or should have known, of the risk. *Id.* at 839. Therefore, a defendant must know of the risk to an inmate but fail to respond to that risk. *Id.*

### Defendants Hannel and Leventry

Plaintiff's claim fails against Defendants Hannel and Leventry. Plaintiff does not allege any facts indicating Defendants Hannel and Leventry were in any way involved with the attack by Inmate Jackson.[8] Plaintiff has failed to introduce any facts showing a "meeting of minds" from which a reasonable jury might find that these Defendants conspired in planning this attack.

---

[8] Plaintiff does not merely allege that Defendants failed to protect him from Inmate Jackson's attack, but also claims that Defendants and other prison officials conspired and arranged for Inmate Jackson to attack Plaintiff in retaliation for filing grievances and lawsuits. Prison officials who encourage inmates to attack other inmates are as liable as they would be if they had actually inflicted the injury. *See, e.g. Benefield v. McDowall*, 241 F.3d 1267 (10th Cir. 2001); *Pinkston v. Madry*, 440 F.3d 879 (7th Cir. 2006); *Fischl v. Armitage*, 128 F.3d 50 (2d Cir. 1997). Planning an attack against an inmate has the potential for great harm and constitutes deliberate indifference to the safety of that inmate, satisfying both prongs of the *Farmer* test. *See Benefield*, 241 F.3d at 1271. However, planning an attack falls under the Eighth Amendment category of excessive use of force, rather than failure to protect.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

*Smithson v. Aldrich*, 235 F.3d 1058, 1063 (8th Cir. 2000) (internal citations omitted).

Defendants Hannel and Leventry were not even assigned to B-Wing on the day of the attack.

Additionally, Plaintiff fails to demonstrate that Defendants Hannel and Leventry knew of a

specific risk of harm, and they cannot be liable under the two part deliberate indifference standard

enumerated above. Plaintiff's general allegations are insufficient and Defendant Hannel and

Defendant Leventry are entitled to summary judgment.

### *Defendant Hooker*

To survive summary judgment, Plaintiff must show that he was "incarcerated under

conditions posing a substantial risk of serious harm . . . [and that Defendant Hooker displayed]

deliberate indifference" to the inmate's plight. *Farmer*, 511 U.S. at 834. Plaintiff has presented

sufficient evidence that a reasonable jury could find that Defendant Hooker failed to protect

Plaintiff or otherwise guarantee his safety.

Correctional Officer Arvin Zeller stated in his affidavit that "[i]t was clear that one inmate

[Inmate Jackson] was slashing at the other inmate [Plaintiff] and that Plaintiff was bleeding

around his face and neck and trying to escape from further injury." This statement demonstrates

conditions posing a substantial risk of serious harm. *See Farmer*, 511 U.S. at 834. Nonetheless,

when Defendant Hooker responded to the attack, he did not seize or apprehend the attacker.

Rather, Defendant Hooker sprayed Plaintiff in the eyes with mace. The parties' respective factual

accounts are then in dispute as Plaintiff alleges that Defendant Hooker grabbed Plaintiff's arm,

stopping him from defending himself. In viewing the facts presented in the light most favorable to

the Plaintiff, as the non-moving party, and giving the Plaintiff the benefit of all reasonable

inferences which may be drawn from his account of the facts, the Court finds that a reasonable

jury could find that Defendant Hooker's actions constituted deliberate indifference. *See Id.*

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Because there is a genuine dispute of material fact as to what actually occurred, summary judgment is not proper and should be denied on Plaintiff's claims that Defendant Hooker failed to protect or otherwise guarantee Plaintiff's safety.

Based on the findings enumerated above, the Court finds that Defendant Hooker is not entitled to qualified immunity. Qualified immunity protects government officials performing discretionary duties from liability "insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. The threshold question the Court must ask is "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201. The next step in the analysis is to ask if "the right was clearly established . . . in light of the specific context of the case." *Id.* In the case at hand, the Court finds sufficient evidence that Defendant Hooker may have violated Plaintiff's Eighth Amendment rights. Such rights under the Eighth Amendment, dealing with protecting a prisoner from a foreseeable attack or otherwise guaranteeing a prisoner's safety, were clearly established at the time of the alleged attack. Therefore, Defendant Hooker's motion for summary judgment on grounds of qualified immunity should be denied.

### 4. *Count 1: Cruel and Unusual Punishment - Excessive Use of Force*

Prison officials may use an amount of force that is reasonable and necessary under the circumstances to achieve a legitimate penal objective. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). However, the "unnecessary and wanton infliction of pain" violates the Eighth Amendment prohibition against cruel and unusual punishment. *Id.* at 319. When a prisoner alleges excessive force, the Court must consider "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). Additionally, a plaintiff must suffer an "actual injury." *Dawkins v. Graham*, 50 F.3d 532, 535 (8th Cir. 1995). Malice is shown when a prison employee " without just cause or reason, [undertakes] a course of action intended to injure another" and a prison employee acts sadistically when they "engag[e] in extreme or excessive cruelty." *Howard v. Barnett*, 21 F.3d 868, 872 (8th Cir. 1994). Courts must also consider "the threat the officials reasonably perceived, the need for the use of force, the efforts made to minimize the force used, the relationship between the need for using force and the amount of force used, and the degree of injury inflicted." *Id.* at 871. Unless officials act in bad faith or without a legitimate purpose, courts should not interfere with prison administration. *Stenzel v. Ellis*, 916 F.2d 423, 427 (8th Cir. 1990).

### Defendants Hannel and Leventry

Plaintiff claims that Defendant Leventry, acting on orders from Defendant Hannel, drove his knee into Plaintiff's back when handcuffing him, and that Defendants Leventry and Hannel made him walk to the prison infirmary until he collapsed. Where Plaintiff's claims fail is that they do not allege an actual injury. *See Dawkins*, 50 F.3d at 535. Plaintiff does complain of ongoing back pain, but he does not present any evidence that his back pain results from Defendant Hannel's actions.[9] He does not show that he suffered any additional injury or that his injuries were at all exacerbated by Defendant Leventry and Defendant Hannel forcing him to walk to the infirmary until he collapsed. Plaintiff has failed to present any evidence from which a reasonable

---

[9] The Court does not infer that his back injury resulted from Defendant Hannel's knee. Plaintiff alleges facts indicating that his back injury may be the result of Defendant Hooker throwing him against the metal drawer. Alternately, it is possible that an event outside of the facts alleged in this suit caused his back injury. Regardless, Plaintiff has not presented any information indicating the cause of his injury, and the Court must grant summary judgment in the absence of any material fact demonstrating that Defendants Hannel and Leventry are responsible for Plaintiff's back injury.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

jury could find that Defendant Hannel and Defendant Leventry caused Plaintiff to suffer an actual injury. There is no genuine issue of material fact and Defendants Hannel and Leventry are entitled to judgment as a matter of law on Plaintiff's claim of excessive use of force.

### *Defendant Hooker*

Plaintiff's alleges that Defendant Hooker violated his Eighth Amendment rights through the excessive use of force, both in Defendant Hooker's own actions and through directing the attack against Plaintiff. The Court will first consider Plaintiff's allegation that Defendant Hooker directed the attack.

Evidence that Defendant Hooker directed the attack against Plaintiff would support Plaintiff's claim of excessive force. Officials who encourage inmates to attack other inmates are as liable as they would be if they had actually inflicted the injury. *See, e.g. Benefield*, 241 F.3d 1267. Plaintiff has failed to present evidence that Defendant Hooker conspired with any other prison officials to encourage or allow the attack. Plaintiff has failed to introduce any facts showing a "meeting of minds" from which a reasonable jury might find that these Defendants conspired in planning this attack. *Smithson v. Aldrich*, 235 F.3d 1058, 1063 (8th Cir. 2000) (internal citations omitted). As discussed in more detail below, Plaintiff has produced evidence indicating a retaliatory motive. However, he has not presented any evidence that Defendant Hooker actually arranged for Inmate Jackson to attack Plaintiff. *See, e.g., Miller v. McBride*, 64 F.App'x 558 (7th Cir. 2003). As a result, Defendant Hooker is not liable for Inmate Jackson's use of force against Plaintiff.

Plaintiff has also alleged facts indicating that Defendant Hooker personally used excessive force against Plaintiff during and immediately after the attack by Inmate Jackson. Plaintiff was being attacked by Inmate Jackson, and the affidavit of Correctional Officer Arvin Zeller states that

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

"[i]t was clear that one inmate [Inmate Jackson] was slashing at the other inmate [Plaintiff] and that Plaintiff was bleeding around his face and neck and trying to escape from further injury." Nonetheless, when Defendant Hooker responded to the attack, he did not seize or apprehend the attacker. Rather, Defendant Hooker sprayed Plaintiff in the eyes with mace. The parties' respective factual accounts are then in dispute as Plaintiff alleges that Defendant Hooker grabbed Plaintiff's arm, stopping him from defending himself and Plaintiff alleges that immediately after the attack, Defendant Hooker grabbed Plaintiff and shoved him against a metal drawer, sprayed him again with mace, and then grabbed him by the throat and slammed him to the floor. Defendant Hooker's version of the above events is that he chased Plaintiff in to the sally port, told Plaintiff to get down on the ground, and that Plaintiff complied. In viewing the facts presented in the light most favorable to the Plaintiff, as the non-moving party, and giving the Plaintiff the benefit of all reasonable inferences which may be drawn from his account of the facts, the Court finds that a reasonable jury could find that Defendant Hooker's actions constituted excessive use of force against Plaintiff. Because there is a genuine dispute of material fact as to what actually occurred, summary judgment is not proper and should be denied on Plaintiff's claims of excessive use of force by Defendant Hooker.

Additionally, the Court finds that Defendant Hooker is not entitled to qualified immunity. Qualified immunity protects government officials performing discretionary duties from liability "insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. In taking the evidence in the light most favorable to the Plaintiff, the Court finds that there is sufficient evidence that Defendant may have violated Plaintiff's Eighth Amendment rights. Such rights under the Eighth Amendment dealing with the excessive use of force were clearly established at the time of the

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

alleged attack.  Therefore, Defendant Hooker's motion for summary judgment on grounds of qualified immunity should be denied.

### 5. *Count 2: Retaliation and Deprivation of Right of Access to Legal Process*

A cause of action under Section 1983 arises when a state actor retaliates against an individual's exercise of federal rights, or deprives an individual from exercising a federal right. *See Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310 (9th Cir. 1989).  "[T]he right to access the courts is guaranteed by an amalgam of the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses."  *White v. Kautzky*, 494 F.3d 677, 679 (*citing Christopher v. Harbury*, 536 U.S. 403, n.12 (2002)).

The Court will first consider Plaintiff's claim of deprivation.  In his Fourth Amended Complaint, Plaintiff alleges that evidence and affidavits he had compiled for this case were taken from his cell and his property locker.  For a claim of deprivation of access to the courts to be actionable, the conduct does not have to successfully prevent a person from filing suit.  *McKay v. Hammock*, 730 F.2d 1367 (10th Cir. 1984).  However, for such a claim to be sustained, Plaintiff must prove that either he suffered an actual injury or prejudice as a result of the deprivation. *Klinger v. Department of Corrections*, 107 F.3d 609, 616-17 (8th Cir. 1997).  Plaintiff has alleged no facts showing any injury suffered as a result of this deprivation.  Plaintiff's conclusory claims must fail as he has not presented any evidence that would support a finding of injury or prejudice, and because he has not presented any evidence outside of his pleadings.  Summary judgment will be granted on Plaintiff's claim of deprivation.

Plaintiff also alleges that the attack was in retaliation for filing lawsuits and prison grievances.  Conduct "in retaliation for the exercise of a constitutionally protected right is

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

actionable under Section 1983." *Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990). To succeed on a claim of retaliation under 42 U.S.C. § 1983, Plaintiff "must prove that he engaged in protected activity and that defendants, to retaliate for the protected activity, took adverse action against [Plaintiff] that would chill a person of ordinary firmness from engaging in that activity." *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007). Additionally, "[t]o avoid summary judgment, [Plaintiff] must submit 'affirmative evidence [of] a retaliatory motive.'" *Id.* at 1029 (*quoting Wilson v. Northcutt*, 441 F.3d 586, 592 (8th Cir. 2006)).

The first requirement is met as Plaintiff engaged in a protected activity. The filing of lawsuits and prison grievances is protected under the First Amendment. *See Dixon v. Brown*, 38 F.3d 379 (8th Cir. 1994). Additionally, the requirement that the retaliation "would chill a person of ordinary firmness from engaging in that activity" is certainly satisfied by the violent attack and the treatment Plaintiff received from Defendants both during and immediately after the attack. *Lewis*, 486 F.3d at 1028. All that remains is that Plaintiff "evidence a retaliatory motive." *Id.* at 1029. Plaintiff does not point to a specific lawsuit or grievance that either he filed or assisted another inmate in filing that would provide a temporal connection to the retaliation. However, Plaintiff has provided the court with the affidavit of Ricky Maddox which attests to the many grievances he had seen Plaintiff file. Additionally, many of the facts[10] surrounding this incident indicate retaliation. In viewing the facts presented in the light most favorable to the Plaintiff, as the non-moving party, and giving the Plaintiff the benefit of all reasonable inferences which may be drawn from his account of the facts, the Court finds that a reasonable jury could find that

---

[10] Including the prison lock down that didn't occur (contrary to prison rules and regulations), the missing video recordings from that evening, that Inmate Jackson had the weapon the same day he came out of administrative segregation where razor blades are strictly regulated, and the way Defendants treated Plaintiff during and immediately after the attack.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Defendants' actions constituted retaliation for his use of the legal process and prison grievance system. Because there is a genuine dispute of material fact as to what actually occurred, summary judgment is not proper and should be denied on Plaintiff's claims of retaliation by all three Defendants.

Additionally, the Court finds that Defendants are not entitled to qualified immunity. As discussed above, qualified immunity protects government officials performing discretionary duties from liability "insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. In taking the evidence in the light most favorable to the Plaintiff, the Court finds that there is sufficient evidence that Defendants may have violated Plaintiff's constitutional rights. Additionally, the Court finds that such rights dealing with an inmate's right to access the courts and file prison grievances, were clearly established at the time of the alleged attack. Therefore, Defendants' motion for summary judgment on grounds of qualified immunity should be denied.

### 6. Count 3: Denial of Equal Protection

"The Equal Protection Clause generally requires the government to treat similarly situated people alike." *Klinger*, 31 F.3d at 731. "[T]he first step in an equal protection case is determining whether the plaintiff has demonstrated that [he] was treated differently than others who were similarly situated." *Id.* Plaintiff complains that Defendants applied more force to him than they did to Inmate Jackson, and that more force was applied to Plaintiff because he is a member of the Moorish Science Temple of America. This claim fails as Plaintiff has not provided the Court with any information as to how Inmate Jackson was treated after Plaintiff left B-Wing for the sally port. As a result, the Court cannot make a determination that Plaintiff and Inmate Jackson were not treated alike. There is no evidence from which a reasonable jury could find that

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Defendants actions violated the Equal Protection Clause. Absent a constitutional violation, there is no basis for liability under 42 U.S.C. § 1983.

### 7. *Count 4: Negligence*

Plaintiff has also brought a negligence claim under Missouri state law against Defendants. Defendants assert that they are immune from this negligence claim under the public duty doctrine and through official immunity.

#### a. Public Duty Doctrine

Defendants assert that the public duty doctrine shields them from liability. The public duty doctrine states that a public employee is not civilly liable for a breach of duty, as long as that duty is owed to the general public and not a particular individual. *Jungerman v. City of Raytown*, 925 S.W.2d 202, 205 (Mo. banc 1996). "The public duty doctrine recognizes that the duties of public officers are normally owed to the general public and that a breach of such duty will not support a cause of action by an individual injured thereby." *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 445 (Mo. banc 1986). If the acts of a public employee are covered under this doctrine, the defendant's state of mind becomes irrelevant, regardless of if they acted with intent, malice, or gross negligence. *Berger v. City of University City*, 676 S.W.2d 39, 42 (Mo. Ct. App. 1984). "This immunity does not require that the individual be a public official." *State ex rel. Howenstein v. Roper*, 155 S.W.3d 747, 752 (Mo. banc 2005) (internal citations omitted).

A public duty is one that is owed to an affects the general public. *See Geiger*, 974 S.W.2d at 517 (duty to maintain and administer the prescriptions of inmates was owed to the inmates and "did not affect the general public."); *State ex rel. Howenstein*, 155 S.W.3d at 755 ("acts to improve the operations, treatment and training at the clinic were for the public at large," however, treatment provided to individual patient would not be subject to public duty immunity).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Defendants assert that any duty was not just owed to Plaintiff but also to all Potosi prisoners, the staff, and any visitors. However, this argument fails as any duty owed to these individuals is simply insufficient to establish the existence of a public duty. The duty Defendants describe is a duty to prevent against threats "to the safety and security of the institution. This was not a duty owed to the general public at large." *Tarpley v. Stepps*, 2007 WL 844826, at *11 (E.D. Mo. March 19, 2007). Defendants have not demonstrated that a duty was owed to the general public, and as a result the public duty doctrine is inapplicable.

b.     <u>Official Immunity</u>

Another base for Defendants' motion for summary judgment on Plaintiff's claim of negligence is the theory of official immunity. "Official immunity protects public officials from liability for alleged acts of ordinary negligence committed during the course of their official duties for the performance of discretionary acts." *Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760, 763 (Mo. banc 2006). Under this doctrine, public officials are able to avoid liability for ministerial acts that are not performed negligently, and are immune from liability for discretionary acts, as long those acts are not "done in bad faith or with malice." *Davis v. Board of Educ.*, 963 S.W.2d 679, 688 (Mo. Ct. App. 1998); *see also Davis-Bey v. Missouri Dept. of Correction*, 944 S.W.2d 294, 297 (Mo. Ct. App. 1997).

Defendants claim that their acts were discretionary and protected by official immunity. They specifically point to the need for discretion in determining what amount of force should be used in breaking up a prison fight and asserts that no ministerial act was negligently performed. However, Plaintiff does not allege negligence in the amount of force used. Rather, Plaintiff alleges that Defendants were negligent in allowing Inmate Jackson to be released from administrative segregation into the common housing area, in not searching Inmate Jackson before

he entered the common housing area, and in not locking down B-Wing despite the fact that a lock down was called immediately prior to the attack.

Official immunity does not only protect officials from liability, it also applies to protect mere employees when an employee "exercises judgment and discretion." *Davis*, 193 S.W.3d at 763; *Green v. Denison*, 738 S.W.2d 861, 866 (Mo. banc 1987). However, the extension of official immunity to employees is limited. *Davis*, 193 S.W.3d at 763. For example, the official immunity doctrine protects police officers responding to an emergency, but does not apply to police officers responding to a non-emergency. *Id.*

The specific acts or omissions Plaintiff alleges are neither discretionary acts nor acts requiring the exercise of judgment and discretion. Defendants have not provided the Court with any facts indicating an emergency requiring the exercise of judgment and discretion at the time of these alleged acts or omissions. As a result, the doctrine of official immunity does not protect Defendants.

        c.     <u>Judgment as a Matter of Law</u>

As Defendants are not immune from this suit through official immunity or application of the public duty doctrine, the Court now considers whether they are entitled to judgment as a matter of law. While negligent conduct by a prison employee is not actionable under the Due Process Clause, a prison employee may be liable for an inmate's injury that proximately results from a breach of duty to that inmate. *Davidson v. Cannon*, 474 U.S. 344 (1986). Plaintiff alleges that Defendants were negligent in allowing Inmate Jackson to be released from administrative segregation into the common housing area, in not searching Inmate Jackson before he entered the common housing area, and in not locking down B-Wing despite the fact that a lock down was

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

called immediately prior to the attack. All three of these allegedly negligent acts or omissions took place prior to the attack.

"The elements of a negligence claim are: (1) the existence of a duty on the part of the defendant to protect the plaintiff from injury, (2) breach of that duty, and (3) an injury to plaintiff which was proximately cause by the defendant's breach." *Geiger v. Bowersox*, 974 S.W.2d 513, 516 (Mo. Ct. App. 1998). Defendants Hannel and Leventry were not assigned to B-Wing, on the day of the attack, and merely responded to B-Wing when information regarding the attack was radioed to them. As a result, even if Plaintiff is able to prove that the failures enumerated above amounted to negligence, Defendants Hannel and Leventry were not involved in any of these breaches of duty, and they are entitled to summary judgment on Plaintiff's claim of negligence.

Plaintiff's claim against Defendant Hooker also fails. While Defendant Hooker was assigned to B-Wing on the day of the attack, Plaintiff has not produced evidence that Defendant Hooker had any duty to search Inmate Jackson before he entered the common area of B-Wing, that Defendant Hooker was involved in determining whether Inmate Jackson could safely be allowed into the general population, or that Defendant Hooker was responsible for locking down B-Wing. While these acts or omissions may be negligent, Plaintiff has failed to provide the Court with any information that it was Defendant Hooker who breached a duty to Plaintiff. There is no evidence from which a reasonable jury could find that Defendant Hooker's actions were negligent. There is no genuine issue of material fact and Defendant Hooker is entitled to judgment as a matter of law on Plaintiff's claim of negligence.

## V. CONCLUSION

The Court concludes that Defendants are entitled to summary judgment on all of Plaintiff's claims against Defendants in their official capacity along with Plaintiff's claims against Defendants

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

in their individual capacity for the deprivation of right of access to the legal process, violation of Plaintiff's rights under the Equal Protection Clause and Plaintiff's claims of negligence. These counts against the Defendants are dismissed with prejudice. However, summary judgment is not granted for Plaintiff's claims against Defendant Hooker in his individual capacity for violations of Plaintiff's rights under the Eighth Amendment for failing to protect or guarantee Plaintiff's safety and for the excessive use of force. Summary judgment is not granted for Plaintiff's claims against Defendants Hannel and Leventry in their individual capacity for violating Plaintiff's rights under the Eighth Amendment for deliberate indifference to a serious medical need. Additionally, summary judgment is not granted for any Defendant in their individual capacity for Plaintiff's claim of retaliation for the exercise of a constitutionally protected right.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Strike [doc. #200] is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment [doc. #197] is **GRANTED in part** and **DENIED in part.** All of Plaintiff's claims against Defendants in their official capacity are dismissed. Plaintiff's claims of deprivation of right to legal process, negligence, and violation of equal protection are dismissed as to all Defendants. However, summary judgment is not granted as to Plaintiff's claims against Defendants in their individual capacity for retaliation for the exercise of a constitutionally protected right. Additionally, summary judgment is not granted as to Plaintiff's claims against Defendants in their individual capacity for cruel and unusual punishment in violation of the Eighth Amendment. Specifically, summary judgment is not granted for Plaintiff's claims under the Eighth Amendment against Defendant Hooker for failing to protect or guarantee Plaintiff's safety and for the excessive use of

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

force, and it is not granted for Plaintiff's claims under the Eighth Amendment against Defendants

Hannel and Leventry for deliberate indifference to a serious medical need.

Dated this 20th Day of November, 2007.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

PDF created with FinePrint pdfFactory trial version www.pdffactory.com